IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:18-cv-00867-RM-SKC

TINA SHAW,

    Plaintiff,

v.

SHANDONG YONGSHENG RUBBER CO. LTD.,
SHANDONG YONGSHENG RUBBER GROUP CO. LTD.,
ITG VOMA CORP.,
AMERICAN TIRE DISTRIBUTORS HOLDINGS, INC., and
AMERICAN TIRE DISTRIBUTORS, INC.

    Defendants.

## ORDER RE: DISPUTED PROTECTIVE ORDER

    This Order addresses Plaintiff Tina Shaw's ("Shaw") and the Defendants' dispute regarding five clauses in the parties' proposed protective order. Consistent with my Civil Practice Standards, the parties contacted my Chambers concerning their dispute and were instructed to submit their respective proposed orders and briefs arguing the disputed provisions. [#197.] [1] The Court reviewed the briefs [#198 (Defendants' Discovery Brief); #199 (Shaw's Discovery Brief)], the proposed protective orders [#198-1; #199-1], the docket, and applicable law. Oral argument will not materially assist the Court's consideration of an appropriate protective order. [*See* #200 (Minute Order Vacating

---

[1] The Court uses "[#__]" to refer to entries from the electronic docket.

1

Discovery Hearing).]

## A. BACKGROUND

Briefly, this is a product liability action to recover damages Shaw suffered from a motor vehicle accident on Interstate 70 in Adams County, Colorado. [#214 at ¶1.] Shaw alleges the accident was caused by the failure and tread separation of a Capital Precision Trac II tire manufactured and distributed by Defendants. [*Id.* at ¶¶1, 6, 26, 68-70.] In relevant part, Shaw seeks damages for disfigurement; pain and suffering and emotional distress; past and future medical, hospital, and rehabilitation care and services; nursing care and services, medications, therapies, and other care and assistance expenses; loss of enjoyment of life and impairment of the quality of life; physical and cognitive impairment; and scarring. [#163, §5.]

## B. DISCUSSION

Federal Rule of Civil Procedure 26(c) allows a court to issue a protective order for good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). Good cause is not met by conclusory statements. *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002)). Ultimately, the decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990).

Even though the parties initially contacted Chambers concerning a "stipulated"

protective order, Shaw now argues that Defendants have made no showing of good cause for a blanket protective order, and that Defendants waived their right to a protective order. [#199 at pp. 1-2.] The Court disagrees.

First, the Court notes that Shaw attached a proposed "<u>Stipulated</u> Protective Order" to her discovery brief which states that "[d]iscovery in this case . . . is certain to involve medical, health, personal or other information of a sensitive and/or private nature about Plaintiff." [*Id.* at p.1 (emphasis added).] Why Shaw now opposes the entry of a protective order in this matter is beyond the Court, particularly where a protective order would inoculate her personal and medical records from public disclosure. In any event, the Court finds the potential for the public disclosure of Shaw's production of documents and things containing her private medical and health information, and Defendants' production of documents and things containing their "business, competitive, proprietary, [or] trade secret" information, poses a serious injury that is sufficiently clear and defined to warrant issuance of a protective order. [*See* #198-1 at p.1.]

Moreover, the Court is not persuaded by Shaw's argument that Defendants' waived their right to a protective order. The only controlling precedent Shaw relies on is the Tenth Circuit's opinion in *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation.* 669 F.2d 620 (10th Cir. 1982). There, the party sought protection from a subpoena. *Id.* at 622 n.2. The Tenth Circuit held that a Rule 26(c) motion for protection from a subpoena must be made "before the date set for production." *Id.* Here, Defendants move for a blanket protective order to protect confidential or proprietary information that is relevant to these proceedings and likely to be disclosed during pretrial

discovery. Therefore, their request for a protective order is timely, and the Court finds good cause for entering a protective order. The Court now turns to the specific proposed provisions in dispute.

**1.      Sharing Provision**

Shaw seeks to include a sharing provision that would allow her to disseminate confidential information to any attorneys "handling claims or legal proceedings . . . involving a substantially similar tire, including other Capital Precision Trac II tires, . . . by any of the Defendants." [#199-1 at ¶5(g).] She argues that sharing provisions in product defect cases against large corporate defendants are commonplace and help promote efficiency in the discovery process. [#199 at pp. 3-4.]

The Court acknowledges that judges and litigants are bound by Federal Rule of Civil Procedure 1, which requires the civil procedure rules be employed in a manner "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As Shaw correctly notes, sister courts have recognized Rule 1 as supporting sharing provisions to ensure efficient and inexpensive determination of other cases involving similar claims and similarly situated litigants in products liability cases. *See, e.g., Ward v. Ford Motor Co.*, 93 F.R.D. 579 (D. Colo. 1982) (finding a sharing provision appropriate where alleged a design defect was the cause of hundreds of injuries to plaintiffs in "several hundred such cases . . . filed in various courts throughout the United States"); *Baker v. Ligget Group, Inc.*, 132 F.R.D. 123 (D. Mass. 1990) (issuing protective order with sharing provision with litigants in other tobacco tort cases); *see also Charter Oak Fire Ins. Co. v. Electrolux Home Products, Inc.*, 287 F.R.D. 130 (E.D.N.Y.

2012). But those case are distinguishable from Shaw's case.

In *Ward*, the Court vacated a protective order that contained a no-sharing clause because the plaintiff asserted that a design defect was the cause of hundreds of injuries to multiple plaintiffs in "several hundred such cases . . . filed in various courts through the United States." 93 F.R.D. at 579. A sharing provision was allowed in *Baker* due to the discovery needs of similar plaintiffs in comparable, pending tobacco tort cases. *See* 132 F.R.D at 126. The *Baker* Court was persuaded by plaintiff's showing of a "compelling and extraordinary need with counsel for the same plaintiff in other related litigations against [defendant]." 287 F.R.D. at 134 (finding duplicative discovery in cases involving the same plaintiff and defendant would "result in an enormous waste of time and resources for the party and the court.").

To this end, Shaw directs the Court to the <u>one</u> other case she knows of that was filed against two of the five Defendants in this case—Shandong Yongsheng Rubber Group Co., Ltd. and American Tire Distributors, Inc. (the "*Salazar* case"). [*See* #199 at p.4 n.6.] The *Salazar* case, however, involves a "Hercules All Trac A/T tire, LT 245/75R16 bearing DOT number JELK FCL 3009." The matter currently before this Court involves a different tire—the "Capitol Precision Trac II size 265/75R16 M+S tire believed to bear DOT number JENK ETP 1712." [*Compare* #199-6 at ¶3.1, *with* #216 at ¶103.] These tires appear to differ in brand, size, and model. Moreover, three of the Defendants in Shaw's case (Shandong Yongsheng Rubber Co. Ltd, ITG Voma Corp., and American Tire Distributors Holdings, Inc.) are not defendants in the *Salazar* case. [*See* #199-6.] Thus, a sharing provision would expose confidential and proprietary information of other litigants

5

not party to the *Salazar* case. Shaw has not pointed to any pending cases involving the alleged defective tire at issue in this case, or involving comparable plaintiffs, comparable claims, or comparable alleged injuries brought against the five Defendants named in this case.

Where good cause supports entry of a blanket protective order, as it does here, the Court must strike a delicate balance between achieving the requirements of Rule 1 and preventing "fishing expeditions or an undirected rummaging . . . for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009); *see also Baker*, 132 F.R.D. at 125 (noting the propriety of restricting the right to disseminate information obtained in discovery that involves the producing party's "true trade secrets and confidential research, development and commercial information."). Shaw has not convinced the Court that the sharing provision she seeks is anything more than "an improper attempt to provide a strategic discovery benefit to counsel and litigants in future cases against the Defendants." *Strough v. Gen. Motors LLC*, Civ. No. 18-cv-03303-PAB-NRN, 2019 WL 2357306, at *3 (D. Colo. June 4, 2019) (emphasis in original).

In essence, Shaw seeks a "preemptive" sharing provision that "would essentially allow discovery of Defendants' designated confidential information by as-yet unnamed plaintiffs or potential plaintiffs in collateral litigation without any court supervision and without any opportunity for Defendants to object to the disclosure." *See Mckellips v. Kumho Tire Co. Inc.*, No. 13-cv-2393-JTM-TJJ, 2014 WL 3541726, at *1 (D. Kan. July 17, 2014) (denying inclusion of a "preemptive" sharing provision.). Under the circumstances of this case, the Court is persuaded by the notion that the sole purpose of discovery is to

assist the parties to litigation in the preparation of their specific case for trial or settlement. *Seattle Times,* 467 U.S. at 34 (observing that liberal discovery is provided for the sole purposes of assisting and preparing for trial or the settlement of litigated disputes).

Finally, "[a] sharing provision undermines the reason for a protective order in the first place and puts the confidential information at risk of disclosure." *Ramos v. Cooper Tire & Rubber Co.*, No. 10-CV-198 JAP/ACT, 2011 WL 13266815, at *6 (D.N.M. Mar. 8, 2011). This is especially true where, as here, discovery is expected to include Defendants' trade secrets. For these reasons, the Court rejects Shaw's request for a sharing provision.

**2. Use Provision**

Defendants propose inclusion of the following provision:

> *Use in this Litigation Only.* Confidential Information may be used only for purposes of this litigation. Each person to whom the disclosure of any Confidential Information is made shall not, directly or indirectly, use, disclose, or disseminate, or attempt to use, disclose or disseminate, any of the same except as expressly provided herein.

[#198-1 at ¶7.] Shaw seeks to include language that would further limit the sharing of her "medical records, private health information, and other personal information of a sensitive nature[.]" [#199-1 at ¶7.] She proposes the following:

> Plaintiff's Confidential Information, including but not limited to her medical records, private health information, and other personal information of a sensitive nature, is presumed confidential irrespective of formal designation as such, and shall not be shared or disseminated by the parties, their representatives, or their insurers for any purposes unrelated to this litigation including, without limitation, sharing with or dissemination to insurance databases, adjustment bureaus, information vendors, or underwriters. Plaintiff's Confidential Information produced in this case will be used by the Defendants, their counsel, their experts, and their insurers solely for the limited purpose of defending against Plaintiff's claims in this lawsuit. Defendants and their counsel will maintain a written record of all persons or entities to whom any redisclosure or production of Plaintiff's records is made

including identification of the documents or information disclosed and the written acknowledgement of such persons or entities to be bound by the terms of this Protective Order and to be subject to this Court's jurisdiction for purposes of same.

[#199-1 at ¶7.]

Shaw contends this additional language is necessary to ensure that her confidential information is not "disseminated or used by the Defendants or their insurers for any purpose unrelated to this litigation." [#199 at p.5.] According to Defendants, during the parties' conferral Shaw further "asserted this information cannot be shared beyond the insurer, alleging that this information is improperly used in various databases and 'clearinghouses' that would be used against" her.[2] [#198 at pp.3-4.] Defendants object to inclusion of this language on several grounds. [*See id.*]

The Court notes that Shaw's medical records are generally protected by statute. The wrongful disclosure of individually identifiable health information is a statutory offense subject to penalty under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6 (2019). So, to the extent Shaw seeks to include language that explicitly identifies her medical records and private health information as "presumed confidential irrespective of formal designation," the Court finds good cause to do so. However, Shaw must still stamp or mark any of these records as "Confidential" to assist with the identification of these records and so that Defendants are not left to guess at what Shaw may contend constitutes a medical record or private health information, even if the status of such a document might be presumed to be obvious. [#199-1 at ¶7.]

---

[2] Shaw did not make this contention in her Discovery Brief. She only apparently raised it during the Parties' conferral, according to Defendants.

The remainder of Shaw's proposed language is overbroad and unduly burdensome. Shaw attempts to severely limit Defendants' ability to disseminate her confidential information to Defendants' insurers and their underwriters, as may be necessary for the litigation of this case, based on vague and conclusory assertions of "improper" use, without providing good cause. [198 at pp. 3-4.] The Court acknowledges the sensitive nature of personally identifiable health information, but Shaw affirmatively placed her medical condition and related health information at issue by filing this action and seeking damages for numerous alleged physical, emotional, and mental injuries. Defendants must be afforded the opportunity to use confidential information obtained through discovery to assess Shaw's claims and their defenses, and to evaluate the case for possible settlement. The protective order, in addition to statutory penalties for wrongful disclosure of health information, are adequate safeguards to ensure that the dissemination of Shaw's medical information will be limited to the litigation and possible settlement of this case. [*See* #198-1 at ¶7;] *cf. Estate of Lillis v. Bd. Of Cty. Comm'rs of Arapahoe Cty.*, 2019 WL 3386471 (D. Colo. July 26, 2019) (considering sanctions against an attorney for alleged HIPAA violations).

3. **Filing Provision**

Defendants propose the following "filing" provision:

> *Filing.* In filing any Confidential Information with the Court, or filing any pleading, motion, brief, or other document that references or discloses the substance or content of Confidential Information, the filing party must comply with the requirements of D.C.COLO.LCiVR 7.1 and 7.2, which govern restrictions on public access to filed documents in this matter.

[#198-1 at ¶10.] Shaw seeks to add language to the end of the paragraph that qualifies

the provision as follows: " . . . consistent with the Court's policy that the public shall have access to all documents filed with the court and all court proceedings." [#199-1 at ¶10 (internal quotations omitted).] Defendants object to the inclusion of this qualifying clause on the grounds that Shaw would be able to redact Defendants' confidential documents and file them in a public forum without conferring with the producing party, and that Local Rules 7.1 and 7.2 sufficiently cover these matters, rendering Shaw's language redundant. [#198 at pp. 4-5.] The Court agrees.

Shaw's proposed language appears to be taken directly from Local Rule 7.2(a), which reads: "[u]nless restricted by statute, rule of civil procedure, or court order, the public shall have access to all documents filed with the court and all court proceedings." D.C.COLO.LCivR 7.2(a). The inclusion of this language in the proposed protective order is redundant and may create unnecessary confusion to an otherwise clear and concise provision. It is sufficient that the protective order requires compliance with Local Rule 7.2 in total, which is required of the parties anyway. Therefore, the Court rejects Shaw's proposed addition.

4.     **Return After Litigation Provision**

Defendants propose including a "return after litigation" provision that requires the return or destruction of confidential information after the final termination of this case. [#198 at pp. 5-6.] Defendants contend that without this provision, the purpose of the protective order would be defeated. [*Id.*] Shaw did not brief this issue, but she did provide proposed language. [*See* #199-1 at ¶12.] Her proposed language would except "materials produced and obtained in discovery" and "shared pursuant to" her proposed sharing

provision, from the post-litigation obligation to return or destroy confidential information. [*Id.*]

Shaw's proposed language strips the post-litigation provision of any meaning and would render the provision superfluous. Moreover, post-litigation return or destroy provisions are common features of protective orders. *See, e.g., Gillard*, 196 F.R.D. at 389. They safeguard the purpose of protective orders once litigation concludes. *See* Fed. R. Civ. P. 26(c). Thus, the Court rejects Shaw's proposed language.

**5.     Authentic Business Record Provision**

Finally, Shaw wants to add an "Authentic Business Record" provision that reads as follows:

> *Authentic Business Record.* Notwithstanding any other provision of this Order, all documents designated as Confidential, which are authored in their entirety by the Producing Party, are deemed to be authentic copies of business records maintained by the Producing Party in the ordinary course of business except as follows. If the Producing Party believes any particular such document(s) is not appropriately deemed an authentic business record maintained in the ordinary course of business, it may, by stipulation or motion filed within 30 days of production, seek an Order of the Court to have the document(s) excepted from being deemed an authentic business record maintained in the ordinary course of business. Other documents designated as confidential, which are not authored in their entirety by the Producing Party, are deemed to be authentic copies of records in the possession of the Producing Party.

[#199-1 at ¶14.] Defendants oppose this provision on grounds that it exceeds the scope and purpose of the protective order; it would inhibit the efficient and cost-effective litigation of this matter by forcing a producing party to file a motion to exclude its own documents from being deemed authentic business records; and it results in the parties waiving their objections to authenticity (or other foundational evidentiary objections) in exchange for

designating a document "Confidential." [#198 at p.6.]

Despite several example protective orders containing this provision that Shaw attached to her brief, the Court does not agree this provision is necessary or useful to the inherent purpose of a protective order. *See* Fed. R. Civ. P. 26(c) [*See generally* #199-2.] Moreover, every example protective order Shaw referred this Court to that contained this provision was <u>stipulated</u> to by the parties. [*Id.*] Defendants have not stipulated to this provision, and the Court finds the provision unnecessary.

### C. CONCLUSION

For the foregoing reasons, the Court finds good cause for entry of a protective order in this matter. IT IS ORDERED that the Clerk of Court shall docket Exhibit A to this Order as the Protective Order in this matter.

DATED: October 30, 2019

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge